I would like to acknowledge the presence on this panel of the Honorable David Hanson. And beyond acknowledging Judge Hanson, I would like to express the profound thanks not only of Judge Nygaard and myself, but also of the entire Third Circuit for his willingness to join us and to help us out. We have been plagued for a number of years by a fair number of vacancies. That problem seems to be finally getting better, but we still have a few. And were it not for our visiting judges and some of the very active senior judges of the Third Circuit, district judges, I don't know where we would be. So, Judge Hanson, thank you so much for coming out from St. Louis and helping us here in Philadelphia this week. Thank you very much, Your Honor. It's a privilege to be here, and I appreciate very much the kind invitation of the Third Circuit. Thank you. Judge Hanson is also a former chief judge of the Eighth Circuit. I should have mentioned that, so he knows not only the jurisprudence that goes with the job, but also the headaches administratively that sometimes attend work on the Court of Appeals. Our first matter for the morning is Washington v. Clem, and so I would call upon Mr. Manchester to come forward for the appellate. Thank you, Your Honor. It may have pleased the Court. I'd like to reserve three minutes of my time today for rebuttal. My name is Edward Manchester, and I represent the appellant, Henry Washington. I'd like to start today by addressing the definition of substantial burden. This Court, by recent letter to counsel, proposed a definition of substantial burden that consists of three alternative parts. Part one of this Court's proposed definition says that a substantial burden exists when there's a choice between religion or receiving a benefit. Part two says a substantial burden exists when the government puts substantial pressure on an adherent to modify his behavior and to violate his beliefs. And part three says a substantial burden exists when the government's action has the tendency to coerce individuals into acting contrary to their religious beliefs. And those are three parts of a disjunctive test. Yes. All of the language you've just gone over, tracking language from Sherbert Thomas and me. Yes. Now, this Court's definition that is in three alternative parts is appropriate as far as it goes, but RLUIPA requires this Court to take this definition one step further. RLUIPA's rule of construction requires that it be interpreted in favor of broad protection of religious exercise to the maximum extent permitted by the Constitution. And the broadest definition of substantial burden found in the Sherbert, Hobby, Wing, and Thomas cases is in footnote six of Sherbert, where it talks about how this situation where there's a choice between religion or receiving a benefit falls under a broader umbrella. Or at least a reading of footnote six suggests that this falls under the broader umbrella of the situation where there's a tendency to inhibit constitutionally protected activity. And this language should be added to the end of part three of the Court's definition in the form of adding to the end of part three the words or tendency to inhibit religious exercise. This additional language, in addition to being required by RLUIPA, also clarifies that all fact patterns involving either coercion or the inhibition of religion fall within the definition of substantial burden. Finally, with respect to the definition of substantial burden, I'd like to note that the Court's definition corrects the district court's error of including a central tenant requirement in the definition of substantial burden, which RLUIPA expressly prohibits as recognized by the Supreme Court in the Cutter case. Now, turning to the facts of this case, under any definition of substantial burden, Mr. Washington's religious exercise has been substantially burdened. And that's because under the ten-book limitation that the government has imposed upon him, he can't read four books a day from four different sources on the same topic where there are hundreds of topics and the topics change daily. He's not asking for the prison to actually buy the books for him, is he? He is not asking for the prison. He just wants an accommodation for books that he already owns or will obtain. Exactly. At no point has he requested that the government buy his books. Now, his religion requires him to read four books a day from four different sources on the same topic where there are hundreds of topics and the topics change daily. And under the ten-book limitation, he simply runs out of books after two and a half days. The government argues in its brief that Mr. Washington actually can practice his religion. But all of the government's arguments fail. First, the government argues that ten books is enough because it's greater than four. But that argument reflects a fundamental misunderstanding of Mr. Washington's religion because it's four books a day from four different sources on the same topic where there are hundreds of topics and the topics change daily. In other words, he needs a new set of four books every day. Second, the government argues that Mr. Washington can trade the books he has. However, that would require trading books on a daily basis. And that simply makes no sense. It would require Mr. Washington to constantly ship books in and out of prison on a daily basis. And that's simply unworkable. The record also indicates he has no money to pay to constantly ship books in and out of prison. Finally, the government argues that Mr. Washington can use the prison library and that that will allow him to practice his religion. However, the record indicates that he can only visit the library once a week for one to 1.5 hours, checking out up to four books at a time. There's no evidence that the record has the types of books that his religion requires. In fact, Mr. Washington in the record stated that the library generally does not have four books on the same African topic. Finally, the government argues that Mr. Washington can donate his books to the library. To the extent the government ever made such an offer. Did the government raise that issue in the district court? It was not raised below in the district court in its summary judgment motion that's on appeal. Now this case, this is the second time this case has been before this court. So previously, the government did raise that issue, but they did not raise it in the summary judgment motion that's on appeal in this case. So that, in addition to waiving that argument, to the extent such an offer was ever made, it did not include any promise of access to the library beyond a single weekly visit. So donating his books to the library would not allow him to practice his religion. Now there's a second tenet of Mr. Washington's religion, and that requires him to teach others about what he's read. But if he can't read the books in the first instance, he can't subsequently teach others what he's read in those four books. So his daily rituals are first to read and second to teach. If he can't read, he can't teach. So there is a substantial burden here on these two tenets of Mr. Washington's religion. And that's all Mr. Washington needs to show under the LUPA. The LUPA then shifts the burden to the government to show that it has a compelling governmental interest in the burden. And that means the government needs to show a compelling governmental interest in limiting Mr. Washington to ten books. You would agree, would you not, that the compelling government interest in the prison context is a less stringent burden to have to carry than in most other strict scrutiny contexts? I disagree. They need to show a compelling governmental interest. I think what you're referring to is are they entitled to deference? I don't think the standard changes. Cutler says they're entitled to deference, but they're entitled to deference only after they explain why they have a compelling governmental interest. Isn't the real work here being done, or ought to be done, under the least restrictive means prong? Well, the government has failed to meet both prongs. With respect to compelling governmental interest, they only have generalized assertions, and that's done enough for the reason stated in the brief. But most strikingly, with respect to the compelling governmental interest, is that the policy contains an educational exception. That means you can have more than ten books for educational reasons. And under the Third Circuit's Fraternal Order of Police case, which held that where a policy has a secular exception but provides no religious exception, that defeats any argument that the government has any heightened interest whatsoever. So the government has no compelling interest here, because they've defeated their own interest by allowing more than ten books for educational reasons. Now, least restrictive means, I agree with you, it's very clear that they have not satisfied the least restrictive means test. First, because the government never explains where the ten-book number came from. They never explain why ten books. The war soldier case cited in the brief is very clear that the government must explain why the policy is the least restrictive means. Now, the government, in their brief, argues that they're entitled to deference, that this court should not second-guess whether it should be ten books or 15 or 20. But the government is entitled to deference only after they come in and explain where the ten-book number came from. How did they come up with that number? What about... how does that ten-book limitation play into some of the other limitations within the policy itself? By that, I mean the policy speaks to how many boxes the prisoner may have, how many newspapers and magazines, I believe. As we look at that policy in its entirety, shouldn't that inform our analysis as well as to whether or not the government here has demonstrated least restrictive means? Yes, the government's policies actually suggest what other least restrictive means are possible. It may allow newspapers and magazines in addition to books. One of the least restrictive means would be to allow more books in lieu of newspapers and magazines. Another policy allows inmates to have the equivalent of four storage boxes in their cell. One of the least restrictive means would be allow the inmate to place in those four storage boxes... Whatever he wants. Whatever he wants. As long as it's not contraband, a weapon, or something of that nature. Exactly. These four storage boxes can be filled with books. That allows the inmate to make the decision between the secular items and the religious items. Other policies show that legal materials are stored in the prison outside the cell. Religious books can be stored outside the cell. Books could also be stored in the library or they could be stored with the chaplain. Now, with respect to any books that are stored outside the cell, Mr. Washington must have access. He must have access to the books in a way that will allow him to read ten books a day. What is the... I thought I was four. I'm sorry, four. I misspoke. What is the relief that your client is seeking here? It wasn't clear to me from the briefs or from Mr. Washington's own filings what he's seeking. Well, this case is before the court on cross motions for summary judgment. As Mr. Washington has met his burden of showing a substantial burden on his religion, and the government failed to meet its burden, this court should grant Mr. Washington's motion for summary judgment and reverse the district court that granted summary judgment for the government. Now, in the alternative, the court could remand this case. The court could set forth the proper definition of substantial burden and instruct the district court to analyze both tenets of Mr. Washington's religion. What are some of the facts that need to be developed, in your view, before the district court for purposes of a remand? There are no facts that need to be developed because Mr. Washington only needs to show a substantial burden on his religion. He doesn't need to show a compelling governmental interest or these restrictive means. And it's clear from the facts, and the facts are actually undisputed by the government. Shouldn't the district court and shouldn't we know how many books Mr. Washington actually read each day prior to the change in the implementation of the DOC policy? Well, that would go to the sincerity of his beliefs, which is not before this court. The government has stipulated that Mr. Washington's beliefs are sincere. I have a question. One question before, and we'll hear you rebuttal. But you began by responding to our inquiry regarding a test, and this court    is a very important one. And I'm wondering if you could explain what you mean by substantial burden. The statute doesn't define it. In the absence of 3rd Circuit jurisprudence, the district court looked to a case written by an extremely wise jurist from the 8th Circuit, as a matter of fact, to extend authority on this question. What would you say in response to a question as to whether Weir v. Nix should be a test or definition we look to for purposes of this Arlupa case? Weir v. Nix is a correct decision under RFRA, which is a different statute than is before the court, which is for Arlupa. And there are two differences here that prevent this court from looking to Weir and definitions of substantial burden under RFRA, and that is RFRA did not have language saying that inmates are entitled to broad protection of religious exercise to the maximum extent permitted by the Constitution. And RFRA's legislative history is different. RFRA's legislative history does not point to the Supreme Court's free exercise jurisprudence. And finally, another difference in RFRA is the definition of religious exercise. It does not define religious exercise in the way Arlupa does as protecting all religious exercise, not just religious exercise that goes to a central tenant. So because Arlupa's different than RFRA, it is inappropriate to look to Weir or in any other case to find a substantial burden under RFRA. Thank you. We'll have you back on the phone. Thank you, Mr. Manchester. Mr. Hopkins? Good morning, Your Honors. May it please the Court. My name is Howard Hopkirk, and I represent the appellees in this matter. The decision of the District Court should be affirmed because Washington did not meet his burden of showing that the corrections officials substantially burdened the free exercise of his religion under Arlupa. And even if the Court finds that Washington was substantially burdened, it should still affirm since the restriction on books served a compelling state interest of health and safety and was narrowly tailored to achieve that end. I'd like to first address the and in the context of the facts which was sent to counsel last week. I don't believe that the test suggested by the Court is appropriate and Isn't it all still good constitutional law from the Supreme Court? Um Yes, it is. But if I can go through each prong I'll explain my reasoning and then I'm going to give an alternative test and also cite to cases under that have interpreted Arlupa from the Circuit Courts more recently. I think that one thing to keep in mind in all of this is this is in the prison context and so some of these other cases might not be applicable. Um, first the first prong a follower is forced to choose between following his precepts and forfeiting benefits in this type of case that has no application because that comes from the unemployment context where someone is getting a benefit and then because of his religious beliefs that benefit is being taken away. In this case Washington is operating under a general rule which applies to all prisoners and what he is seeking is something in addition above and beyond what any other prisoners in the prison system of Pennsylvania receive. So to say that because he's not allowed more than the ten books in his cell that he is being denied a benefit I don't think that that is really applicable. Another problem with all the first and third prong is that there's nothing about substantial the word substantial doesn't appear something analogous like significant or any word like that does not appear in those definitions and that is part of the statute in RLUPA What is? The word substantial burden it's not just any burden it's a substantial burden. That's the term itself however that we're trying to define are you suggesting somehow that we should tautologically include substantial in our definition of substantial burden? Well there needs to be something which reflects substantial and what the appellant wants to do is to make it to water it down so it's any incidental effect the slightest type of effect on someone's religious rights would then be elevated to substantial burden and then the word substantial becomes meaningless Do you concede in advancing an alternative definition to that that has simply been posed as a question here for argument do you concede that the district court employed an incorrect definition of substantial burden here? I agree that as a general definition of substantial but I believe that in this case it didn't matter because I did not believe there was any dispute that what we were here about was a central tenet of Mr. Washington's belief so the fact that the old test under RFRA was used I did not believe that that was material to the question. Didn't the district court in its definition focus on the need for the religious belief to be central or fundamental? He did focus on that but since And if he did, isn't that impermissible under ARLUPA? Well, I believe you're correct your honor but it's kind of wrong except that he also it appears to me that he found that it was a central tenet. He talks about how this is this is something which he is required by his religion it's the central part of his religion so I think the judge found that  really talking about is the burden on that part. Now if you're talking about a general definition that this court is going to adopt that's going to apply in all cases then you certainly would not want to adopt the definition used by Judge Jones below however, I do believe that the concept of substantial burden has not changed from under RFRA. The only thing that has changed is the scope to which it applies and so I would take this small versus Lehman test that this court came up with and I would modify it as follows to exceed the substantial burden threshold, government regulation must significantly inhibit or constrain religious conduct or expression must meaningfully curtail a prisoner's ability to faith or must deny a prisoner reasonable opportunities to engage in those activities that are necessary to freely exercise his religion and I think if you look at the other courts of appeals that the majority of them use language similar to that for instance the 8th circuit a substantial burden significantly inhibits meaningfully curtails or denies reasonable opportunities for religious exercise that's from Murphy versus Missouri Department of Corrections Murphy also uses central tenant language isn't it? I don't remember that I would leave the central tenant part out but I think that the significantly inhibits there has to be something higher than just any ordinary everyday inconvenience or burden another thing I would point out you stay away from tendencies in any event yes your honor because I don't think that is a high enough threshold what if it were framed as a substantial tendency or a significant tendency or say an overwhelming tendency would you agree that an overwhelming tendency would meet the statute whereas a slight tendency might not I think that might meet the standard but I believe that it is more confusing than some of the language from some of these other cases the 5th circuit in Adkins talks about substantial burden truly pressures that occur to significantly modify his religious behavior and significantly violate his religious beliefs the 7th circuit in civil liberties for urban believers talks about a substantial burden is something that necessarily bears direct primary and fundamental responsibility for rendering religious exercise effectively impractical the 9th circuit the war soldier case the 11th circuit the midrash shepardi case 366 F 3rd 1214 I think all these cases have similar language to that which I proposed the appellant they want to suggest that because of the language that says the statute should be interpreted broadly for the benefit of religion that you should go out and you should find whatever court has the most lenient test and by definition that is the correct test and then if tomorrow another circuit comes out with an even more lenient test I suppose the court should then go out and adopt that test as the new standard so the state that permits the most books in a cell is the one we ought to follow well I believe that's what appellants logical position is and I think that does not give due deference to to the prison officials and and does not give respect to our federal system of government as well I'd like to move on because my time is running out as far as the compelling of the of this case this case was already up here and under Turner which I know is a lower standard the court already affirmed that there were legitimate penological interests that were being followed in this policy and those and in this case I don't see how you can say those same interests aren't compelling and I think Judge Smith you're right the question then becomes is this the least restrictive means I don't think there's a real issue as to whether there's a compelling interest to limit the number of books or property in a cell well at the more general level safety and security is always going to be a compelling government interest within the prison context but that that only gets you so far and then I think then you get to the next the real meat of it is whether it's the least restrictive means now how can a 10 book or a 4 book limitation be the least restrictive means when your own DOC policy permits a prisoner to have personal property up to 4 boxes 4 storage boxes were there equivalent? yes your honor doesn't that seem to be internally inconsistent let me answer it this way first of all you need to start from this is not a facial challenge to this regulation this regulation has already been found to be a legitimate regulation and affirmed by this court that's the law of this case now the question though is in the context of RLUIPA Mr. Washington wants to be accommodated to practice his religion but he has not come forward and said well if I had 12 books in my cell that would satisfy me and that would be sufficient for me to practice my religion if the DOC had said ok Mr. Washington you can have 12 or you can have 15 books we would still be here because what Mr. Washington wants if you total it up and the district court was correct in this it would total 1400 and some books per year so the number of books he wants just simply could not be accommodated by him housing these books in his cell so something like either shipping the books out or donating them to the library were the only feasible means of accommodating his specific but you really haven't answered what was the thrust of my last question to you which is aside from contraband why would the least restrictive means not be to simply allow the inmate to determine what property he wants to place in these storage units isn't that really the least restrictive means in the boxes in the cell in the boxes in the cell well in a general theoretical sense that might be true but then you have you have the reality is we're not very generally theoretical around here we're interested in the specific case before us what I'm trying to say is I mean he files grievances you have the PLRA where he needs to file grievances and say specifically what he wants and what he's telling the prison officials he wants is a large number of books which far exceeds even the personal property allowance for his cell so to come up with solutions which would say well substitute some of your underwear for books  his problem and then you have hygiene problems of just saying well you can keep all books and not have clothes that's not a feasible solution am I correct that this limitation is lifted for approved educational books or texts on a exceptions can be made for educational books so doesn't that further undermine this number limitation of books as a least restrictive means well again I'd say if this was a facial challenge to the statute to a statute or a regulation yes but what Mr. Washington wants he doesn't want if he has 15 books instead of in according to him two days running out of books it's going to be it's still less than a week am I correct in recalling that another prison or prisons within the PA system where Mr. Washington was resident permitted him to have more books than this um yes that is correct your honor the again though there are the fact that maybe some other prison officials even within Pennsylvania weren't following the regulations does not doesn't that even if they were deviating from the regulations doesn't that further undermine your least well I think I mean if you have prisoners who are allowed to for some reason keep matches in their cell but they never start a fire that doesn't mean that it's not we're not talking about contraband here we haven't from the beginning we're talking about books well I think if you look at the Beard case um I mean paper and things like that books can be used to and to start fires and things like that I understand what you're saying my time's up books can be good tinder but you don't start fires by rubbing two together I just would go back that this isn't a facial challenge so the problem is if we said he could have 15 books or 20 books or 25 books it still wouldn't solve his problem no I don't thank you very much thank you your honor thank you your honor in your rebuttal would you comment on the 5th circuit Adkins test please the uh 5th circuit Adkins test uses a standard that's higher than tendency to inhibit to that extent it is incorrect and furthermore the Adkins test is incorrect because in the courts holding the court felt that the rule in Adkins which was that all inmates had to have an outside volunteer in order to hold group worship sessions applied to all religions and since it applied to all religions it was not a substantial burden now that makes no sense under RLUPA which requires an individualized determination of whether or not the rule is a substantial burden on your religion and it's also inconsistent with the facts of Adkins where Muslims were under a district court order that actually got them out of the requirement of an outside volunteer so I would say that Adkins test is too stringent and also the holding is wrong there was a substantial burden under almost any test in Adkins RLUPA explains how substantial burden should be defined construction says interpret the statute broadly the legislative history says look to supreme court jurisprudence not to district court or court of appeals jurisprudence and so you're looking to four cases Sherbert, Hobby, Thomas and Wing so this notion that the definition is going to change every time the circuit court opinion comes down is simply not what RLUPA says counsel for the government discussed how the Turner test in this court's own decision the last time this case was before the third circuit this court recognized RLUPA as not a Turner test going back to the district court's opinion we know the district court focused on a central tenant here and how we know that is the district court in analyzing substantial burden never analyzed whether or not the ten book limitation is a substantial burden on Mr. Washington's ability to read four books a day and the only possible explanation for the district court omitting such an analysis is that for whatever reason the district court came to the conclusion that reading four books a day is not a central tenant and Mr. Washington's ability to read four books a day is a substantial burden and he's entitled to that tenant being analyzed under the appropriate substantial burden standard thank you very much counsel thank you to both of council this is a very interesting and important case within the circuit and we will take it under advisement we'll call the next case which is Egonf et al versus      versus Egonf et al versus Whitmer et al       versus Egonf, Whitmer et al versus White